1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   LUIS A. GALVAZ,                 )   No. CV 04-3185-PJW
                                     )
11                 Plaintiff,        )
                                     )   MEMORANDUM OPINION AND ORDER
12             v.                    )
                                     )
13   JO ANNE B. BARNHART,            )
     Commissioner of the Social     )
14   Security Administration,        )
                                     )
15                 Defendant.        )
     _____)

16

17                               I.

18                          INTRODUCTION

19        Plaintiff, proceeding without a lawyer, brings this action

20   pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of

21   the decision by Defendant Social Security Administration ("Agency")

22   denying Supplemental Security Income ("SSI") and Disability Insurance

23   Benefits ("DIB").  Alternatively, he asks the Court to remand the case

24   to the Agency for further proceedings.  For the reasons discussed

25   below, the Agency's decision is affirmed and the case is dismissed

26   with prejudice.

27

28

II.

BACKGROUND

Plaintiff was born on February 12, 1947, and was 56 years-old at the time of the relevant administrative hearing. (Administrative Record ("AR") 61.) He has a sixth-grade education and past relevant work as a general laborer, fire sprinkler installer, paper machine tender, truck loader, and hand packager. (AR 74, 98, 141-43.)

Plaintiff filed protectively for DIB and SSI benefits on June 17, 2002. (AR 61-63.) In his application, Plaintiff alleged disability since April 30, 2002, because of low back and leg pain. (AR 32, 61, 86.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") after his claim was denied initially and on reconsideration. (AR 32-36.)

On June 17, 2003, the ALJ held a hearing. (AR 134.) Plaintiff appeared with counsel and testified with the aid of an interpreter. (*See* AR 139-55.) The ALJ also heard testimony from a vocational expert. (AR 156-58.)

Plaintiff testified that he had become an American citizen about three years earlier--after passing the citizenship test in English-- and added that he could understand "a little" English. (AR 147.) He explained that for 30 years he operated machines in a paper-milling company. (AR 142-43.) Plaintiff stated that he had injured his back in 1985, when a roll of paper snapped from the spool. (AR 143, 148-49.) Although unable to resume that work, Plaintiff continued to work at other jobs--including positions as a hand-packager and a loader-- until 2002, when he was laid off from his job installing fire sprinkler-heads in homes. (AR 142, 149-52, 154-55.) Plaintiff stated

1   that he had not sought unemployment or other benefits after being laid

2   off because he was "too sick" to apply for them.  (AR 152-53.)

3      Since the accident, Plaintiff experienced pain from his right

4   knee area to his upper back.  (AR 143-44.)  He also reported insomnia

5   and fatigue, claiming that he could sit for up to an hour if he

6   "force[d] himself," stand for 30-40 minutes at a time, walk for up to

7   15 minutes, and lift 5 to 10 pounds at most.  (AR 145-46.)  He stated

8   that, pursuant to a doctor's orders, he used a cane to keep from

9   falling whenever he felt like "fainting" from the pain.  (AR 144.)

10   Additionally, Plaintiff took pain medication and received massage

11   therapy for his pain.  (AR 144-45.)

12      Regarding Plaintiff's daily activities, he stated that he smoked

13   and was an occasional drinker, and admitted that his drinking habit

14   had resulted in at least one DUI.  (AR 140-41, 148.)  He explained

15   that he did no household chores; instead, his wife and nieces did all

16   of the housework.  (AR 144-45.)  Plaintiff stated that his driver's

17   license had been revoked, but admitted that he could use the bus.  (AR

18   145, 147-48.)

19      The ALJ next heard testimony from the vocational expert.  (AR

20   156.)  She classified Plaintiff's prior jobs as unskilled or semi-

21   skilled, and ranging from light to heavy exertion.  (AR 156-57.)

22   Counsel waived questioning of this expert, and the ALJ adjourned the

23   hearing.  (AR 157-58.)

24      On October 7, 2003, after analyzing Plaintiff's claims under the

25   Agency's five-step sequential evaluation process, the ALJ issued a

26   decision.  (AR 15-23.)  At step one, he found that the record showed

27   "no work activity by [Plaintiff] since April 30, 2002, his alleged

28   onset of disability."  (AR 17.)  At step two, he found that Plaintiff

has degenerative joint disease of the lumbar spine, an impairment that was "severe" within the meaning of the regulations. (*See* AR 19.) At step three, however, the ALJ found that Plaintiff's impairment was "not severe enough to meet or medically equal" a Listing. (*See* AR 20.) The ALJ then accepted the examining physician's opinion that Plaintiff has the residual functional capacity for medium work. (AR 21.) Measured against this assessment of Plaintiff's residual functional capacity, and on the strength of the vocational expert's testimony that Plaintiff's prior jobs as a hand-packager, paper-machine tender, and general laborer were performed at no more than a medium level of exertion, the ALJ made the step-four determination that Plaintiff could perform his past relevant work. (*See* AR 21-22.) On this basis, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision. (AR 23.)

Plaintiff requested Appeals Council review of the decision. (AR 7.) The Appeals Council denied review on March 8, 2004, and the decision of the ALJ became the final decision of the Agency. (AR 4-6.) On March 30, 2004, Plaintiff filed his Complaint in this Court.

III.

STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn an ALJ's decision

that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

Invoking Rule 41(b) of the Federal Rules of Civil Procedure, the Agency asks the Court to dismiss this matter because of Plaintiff's failure to prosecute it.  (*See* Motion at 4.)  The basis of the Agency's motion is that, since assuming control of the litigation, Plaintiff has disregarded the Court's orders in this matter and has

otherwise neglected to move the litigation along.[1]  Plaintiff has not opposed the motion.  After reviewing the record, the Court is persuaded that this matter should be dismissed with prejudice.

The Ninth Circuit has recognized that district courts may dismiss stale social security matters.  *See Oliva v. Sullivan*, 958 F.2d 272, 273-74 (9th Cir. 1992).  A Rule 41(b) dismissal may be had when claimants fail to prosecute their disability cases.  *See Casillas v. Apfel*, No. CV 00-2244-VRW, 2002 WL 500783, at *1 (N.D. Cal. Mar. 20, 2002)(dismissing for failure to prosecute an SSI claim pursuant to Rule 41(b)); *see also Johnson v. Barnhart*, No. 02-CV-1704(NGG), 2004 WL 725309, at *1 (E.D.N.Y. March 8, 2004)(same).

Dismissal under Rule 41(b) is, however, a sanction to be imposed only in extreme circumstances.  *See Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).  When contemplating a Rule 41(b) dismissal, the Court must consider five factors:

> (1) the public's interest in expeditious resolution of
> litigation; (2) the court's need to manage its docket; (3)
> the risk of prejudice to the defendants; (4) the public

---

[1]  When the Complaint was filed, Plaintiff was represented by counsel.  Counsel subsequently moved to be relieved because he was unable to go forward on the case.  The Court granted counsel's motion and ordered Plaintiff to deliver a disability letter or remand request to the Agency by January 6, 2005, and instructing the Agency to file a status report thereafter.  On January 20, 2005, the Agency informed the Court that Plaintiff had yet to submit a disability letter or remand request.  Accordingly, on January 26, 2006, the Court issued an order requiring Plaintiff to deliver his disability letter or remand request to the Agency by February 11, 2005.  To date, Plaintiff has not delivered his disability letter or remand request.  Plaintiff also has failed to file a brief, though he did submit a letter outlining his complaints with the Agency's decision.

1   policy favoring disposition of cases on their merits; and

2   (5) the availability of less drastic alternatives.

3   *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)

4   (citations omitted).  The Ninth Circuit has suggested that dismissal

5   is proper when at least four factors support dismissal or where three

6   or more factors "strongly" support dismissal.  *See Hernandez v. City*

7   *of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998).

8   Here, all five of the *Yourish* factors weigh in favor of

9   dismissal.  First, the public has a vested interest in the timely

10  resolution of litigation.  *See Nealey v. Transportacion Maritima*

11  *Mexicana, S. A.*, 662 F.2d 1275, 1279 (9th Cir. 1980)(describing this

12  first factor as a "housekeeping measure" to be determined by the

13  district court).  Second, a dismissal in this case will enable the

14  Court to devote its energies to the plethora of other social security

15  matters on its docket that *are* being prosecuted diligently.  *See*

16  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004)

17  (finding that this factor favored dismissal where the plaintiff left

18  his lawsuit "sitting idly on the court's docket").  Third, in light of

19  the repeated extensions and warnings this Court gave Plaintiff over

20  the course of two separate hearings, his continued intransigence is

21  unreasonable and has presumptively prejudiced the Agency.  *See*

22  *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)("Unreasonable

23  delay creates a presumption of injury to the defense.").  Fourth,

24  inasmuch as this case involves a purely private claim for personal

25  disability, it does not implicate the "public" policy favoring a

26  resolution on the merits.  *Cf. Dahl v. City of Huntington Beach*, 84

27  F.3d 363, 366 (9th Cir. 1996)(finding that the public had an interest

28  in a lawsuit alleging police brutality being decided on the merits).

7

1    Fifth, and finally, Plaintiff's failure to heed this Court's orders

2    and warnings indicates that no less drastic measure would have been

3    effective.[2]   *See Malone v. United States Postal Serv.*, 833 F.2d 128,

4    133 (9th Cir. 1987)(noting that "warning a plaintiff that failure to

5    obey a court order will result in dismissal can suffice to meet the

6    'consideration of alternatives' requirement").   Accordingly, the Court

7    concludes that dismissal for lack of prosecution is appropriate at

8    this time.

9        The Court's confidence in this decision is reinforced by its

10   recognition that the Agency is entitled to judgment on the merits

11   pursuant to Rule 56 of the Federal Rules of Civil Procedure.   At the

12   outset, the Court notes that the Agency's motion seeks *dismissal*

13   pursuant to Rule 41(b), and does not address the Complaint on its

14   merits.   (*See* Motion at 4-5.)   Even so, however, Plaintiff will not be

15   prejudiced by an alternative *sua sponte* ruling under Rule 56 because,

16   except in unusual circumstances not present here, a Rule 41(b)

17   dismissal operates as an adjudication on the merits.   *See Stone v.*

18   *Millstein*, 804 F.2d 1434, 1438 (9th Cir. 1986)(affirming dismissal

19   based on both Rule 41(b) and Rule 56).

20

21

22           [2]  On January 26, 2005, the Court instructed the Agency to--among
23   other things--file a summary judgment motion; the Court so notified
     Plaintiff, and required the Plaintiff to file his opposition by April
24   11, 2005.   The Agency timely filed the instant motion to dismiss on
     March 21, 2005.   In a telephonic status conference held on March 24,
25   2005, Plaintiff was given an extension of time to April 29, 2005 to
     file his brief; he was forewarned that his failure to do so would
26   result in the dismissal of his case.   Despite this warning, Plaintiff
     did not file any brief on April 29, 2005; instead, on that date he
27   submitted a letter to the Court expressing his disagreement with the
     ALJ's decision.
28

                                        8

1    The "*[s]ua sponte* entry of summary judgment is proper if there is

2 no genuine dispute respecting a material fact essential to the proof

3 of [the] movant's case[.]" *See Buckingham v. United States*, 998 F.2d

4 735, 742 (9th Cir. 1993)(citation and internal quotation marks

5 omitted).  A litigant must, of course, be given reasonable notice that

6 the sufficiency of his claims will be in issue: "Reasonable notice

7 implies adequate time to develop the facts on which the litigant will

8 depend to oppose summary judgment." *Portsmouth Square v. Shareholders

9 Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985); *see also Celotex

10 Corp. v. Catrett*, 477 U.S. 317, 326-27 (1986).  Formal notice of the

11 requirements of Rule 56(c) is not required in this situation.[3]

12    Assuming that the Court's alternative ruling must meet the notice

13 requirements of the entry of summary judgment upon its own motion,

14 the *sua sponte* grant of summary judgment clearly is appropriate in

15 this case.  As explained above, Plaintiff received more than adequate

16 notice that the sufficiency of his claims would be tested when the

17 Court instructed the Agency to file a motion for summary judgment.

18 Plaintiff's submission of facts outside the Complaint in his April 29,

19 2005 letter to the Court was sufficient to demonstrate that he was on

20 notice that the Court could reach the merits.  *See Destination*

21

22

_____

[3]   Where the non-moving party is a prisoner appearing *pro se*,
"the notice requirements of Rule 56(c) must be strictly adhered to
when a motion to dismiss under Rule 12(b)(6) is converted into one for
summary judgment." *See Garaux v. Pulley*, 739 F.2d 437, 439-40 (9th
Cir. 1984).  Assuming without deciding that the same formal notice
should precede the conversion of a motion under Rule 41(b) into a
motion for summary judgment, the requirement that the Court give
formal notice of the requirements of Rule 56(c) of the Federal Rules
of Civil Procedure "is expressly limited to pro se *prisoners*." *Rand
v. Rowland*, 113 F.3d 1520, 1523 (9th Cir. 1998)(emphasis added)(citing
*Jacobsen v. Filler, et al.*, 790 F.2d 1362, 1364-67 (9th Cir. 1985)).

1  *Ventures, Ltd. v. F.C.C.*, 46 F.3d 54, 56 (9th Cir. 1995).  At the same

2  time, a *sua sponte* conversion of the Agency's motion to dismiss into a

3  summary judgment motion will not deprive the Court of affidavits or

4  other materials outside the record that nonmoving parties typically

5  submit in opposition to summary judgment motions because, except in

6  circumstances not present here,[4] "we simply cannot look beyond the

7  record as it existed before the ALJ when he rendered his decision"

8  when reviewing the correctness of social security decisions.  *Roberts*

9  *v. Shalala*, 66 F.3d 179, 183 n.3 (9th Cir. 1995)(as amended).

10       Turning to the merits, the Court finds no disputed issue of

11  material fact that would preclude the entry of summary judgment in

12  favor of the Agency.  *See* Fed. R. Civ. P. Rule 56.  All of the x-ray

13  reports in the record are unremarkable.  (*See* AR 102, 115, 119, 125.)

14  Plaintiff's medication, which includes only ibuprofen and salsalate

15  for pain, is conservative.  (AR 93.)  Indeed, the only residual

16  functional capacity assessment in the record is that of the consulting

17  physician: who determined that Plaintiff could perform medium work.

18  (AR 114.)  This report is uncontradicted by any evidence in the

19  record; Plaintiff's treating physicians did not give a more restricted

20  assessment of his abilities or recommend any more aggressive

21  treatment.  In these circumstances, "[r]eports of consultative

25       [4]  *See Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000)

26  (stating that the court could consider materials outside the record if
they were submitted to the Appeals Council); *see also Ramirez v.*

27  *Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993)(same).  Plaintiff has
not alleged, and the record does not reflect, that any new material

28  was submitted to the Appeals Council.

physicians called in by the [Agency] may serve as substantial
evidence." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)
(citation omitted).

     None of the points that Plaintiff raised in his April 29, 2005
letter to the Court casts the slightest doubt on the correctness of
the ALJ's decision.  (4/29/05 Letter.)  Plaintiff contends therein
that the ALJ incorrectly found that he could communicate in English.
Plaintiff is wrong.  Though the ALJ did find that Plaintiff could
communicate in English, the record supported this finding.  At the
hearing, Plaintiff admitted at the administrative hearing that he
could speak "just a little" English.  (AR 147.)  Plaintiff testified
he took and passed the United States citizenship test in English.  The
ALJ found that Plaintiff "is able to communicate in the English
language," (AR 15), but did not appear to have considered Plaintiff's
language capabilities in reaching his step-four determination that he
could return to some of his old jobs.  (*See* AR 22-23.)  Assuming that
there is a dispute as to Plaintiff's fluency in English, the Court
cannot find that this disagreement was *material* to the ALJ's step-four
determination that Plaintiff could return to his former jobs.  *See*
*Pinto v. Massanari*, 249 F.3d 840, 847 n.5 (9th Cir. 2001)("We decline
to reach the question of whether illiteracy [*i.e.*, the inability to
communicate in English] may properly be considered at step four of a
disability determination.").  Presumably, if Plaintiff's language
difficulties did not stop him from performing these jobs in the past,
it would not stop him now.

     Plaintiff next contends that an x-ray of his lumbar spine "proves
[that he] does have joint problems."  (4/29/05 Letter at 1.)  This
observation fails to identify a *disputed* issue of fact, because the

1    decision itself acknowledged that Plaintiff suffered from "a

2    degenerative joint disease of the lumbar spine." (AR 19.)  As

3    explained above, the x-ray of Plaintiff's spine was unremarkable.

4    Plaintiff's suggestion that the consulting physician's

5    characterization of the severity of this impairment as "mild" was

6    intrinsically biased because of the fact that the Agency had hired the

7    physician to perform the exam also must be rejected. (*See* 4/29/05

8    Letter at 1.)  Assuming that Plaintiff has raised a dispute as to the

9    impartiality of the consultative physician, this dispute is

10    immaterial.  The United States Supreme Court specifically has noted

11    that the fact that the government hires consultative physicians in

12    social security proceedings does not undermine the independence of

13    those physicians' opinions or indicate bias in favor of the Secretary.

14    *See Richardson v. Perales*, 402 U.S. 389 (1971); *see also Allen v.*

15    *Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).

16        Finally, Plaintiff recites the results of the physical

17    examinations, noting that doctors found mild tenderness, sensory

18    deficits, and arthritis in his lower extremities, and emphasizes the

19    ALJ's conclusion that Plaintiff's degenerative joint disease of the

20    lumbar spine was "severe" within the meaning of the regulations. (*See*

21    4/29/05 Letter at 1-2.)  Again, it is not disputed that Plaintiff has

22    severe physical limitations; indeed, these limitations were expressly

23    noted in the decision. (*See* AR 18-19.)  What is disputed is whether

24    Plaintiff's limitations are *sufficiently* severe to preclude him from

25    resuming any of his old jobs.  On that score, the ALJ's conclusion

26    that Plaintiff could return to his former work despite his limitations

27    is supported by substantial evidence. (*See* AR 110-14.)  Plaintiff's

28    mere recitation of his limitations as found by the consulting and

treating physicians and the ALJ's step-two finding in his favor does not bear on the severity of his symptoms and, thus, is insufficient to create a *material* issue of disputed fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)(noting that a party opposing a summary judgment motion "may not rest upon mere allegations").

In the end, whether the Court dismisses this matter for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure or under the summary judgment standards set forth in Rule 56, the result is the same because each amounts to a decision on the merits.  *See Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 205 (9th Cir. 1951)(noting that "net effect" of alternative motions for summary judgment under Rule 56 and for dismissal under Rule 41(b) "was the same--an adjudication on the merits").  That being said, the Court concludes that the case is subject to dismissal under both grounds and enters judgment accordingly.

V.

CONCLUSION

For all the foregoing reasons, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


DATED:     September   20   , 2005.


_____/s/_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE


S:\PJW\Cases-Soc Sec\GALVAZ, L 3185\Memo Opinion.wpd

13